UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————————

FREDERICK WILLIAMS,

                          Petitioner,

                                                    9:20-CV-00999
v.                                                  (TJM/ML)

LYNN J. LILLEY,

                          Respondent.

———————————————————————————

APPEARANCES:                                        OF COUNSEL:

FREDERICK WILLIAMS
  Petitioner, *Pro Se*


LETITIA A. JAMES                                    PAUL B. LYONS, ESQ.
New York State Attorney General                     Assistant Attorney General
  Counsel for Respondent
28 Liberty Street
New York, New York 10005

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

On August 28, 2020, Frederick Williams ("Petitioner") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction in Columbia County Court for burglary in the second degree, robbery in the third degree, and burglary in the third degree, following a jury trial in December 2013. (Dkt. No. 1 Petition ("Pet.") at 1-2.)  For the reasons set forth below, I recommend that all of Petitioner's claims be rejected and the Petition be denied and dismissed.

## I.    PETITIONER'S FAILURE TO UPDATE ADDRESS

Petitioner commenced this habeas proceeding while incarcerated in Woodbourne Correctional Facility ("Woodbourne") by filing a petition on August 28, 2020. (Dkt. No. 1 at 1.) On or about February 3, 2021, Respondent filed its answer to the Petitioner and served a copy on Petitioner by mail sent to Woodbourne. (Dkt. No. 14.)  On February 4, 2021, this court ordered that Petitioner's traverse, if any, be filed on or before March 8, 2021. (Dkt. No. 16.)

On March 8, 2021, Petitioner filed an extension request. (Dkt. No. 17.)  Both the letter and the mailing envelope for this request indicate Petitioner was still incarcerated at Woodbourne. (*Id.*)  This court granted Petitioner's request on March 9, 2021, and extended the deadline to file a traverse, if any, to April 8, 2021. (Dkt. No. 18.)  The Clerk's office sent Petitioner a copy of this order by regular mail to his address on file at Woodbourne. (*Id.*)

Petitioner did not file a traverse by the April 8, 2021 deadline and did not request any further extensions.  He has had no further communications with this Court.  A recent review of the New York State Department of Corrections ("DOCCS") website (available at https://nysdoccslookup.doccs.ny.gov/) showed that Petitioner was released to parole as of October 14, 2021 and is no longer housed at a DOCCS facility.[1]

My September 1, 2020 order accepting the petition for filing instructed Petitioner that he must "promptly notify the Clerk's Office and all parties or their counsel of any change in his

---

[1]    Although Petitioner has been released from prison, his post-release supervision still satisfies the "in custody" requirement of 28 U.S.C. § 2254(a).  *See Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) ("Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be "custody.") (citing *Jones v. Cunningham*, 371 U.S. 236, 240-43 (1963) (holding that parole satisfies the "in custody" requirement of habeas petitions)); *Peck v. United States*, 73 F.3d 1220, 1224 n.5 (2d Cir. 1995) (holding that supervised release satisfies the "in custody" requirement of habeas petitions).

address." (Dkt. No. 4 at 4.)  That order further cautioned Petitioner that "failure to do so will result in the dismissal of this action." (*Id*. at 4.)

As a result of Petitioner's failure to communicate with the Clerk's office at any time since his October 2021 release from Woodbourne, the Court has no current address for Petitioner.  For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes.  *See Shortell v. Kickbush*, No. 9:20-CV-62 (GLS/DJS), 2021 WL 3856738, at *1 (N.D.N.Y. August 30, 2021) (citing *Michaud v. Williams*, No. 98-CV-1141 (LEK/GLS), 1999 WL 33504430, at *1 (N.D.N.Y. Nov. 5, 1999)).  With that goal in mind, Local Rule 10.1(c)(2) provides:

> [P]ro se litigants must immediately notify the Court of any change of address. Parties must file the notice of change of address with the Clerk and serve the same on all other parties to the action. The notice must identify each and every action to which the notice shall apply.

Relatedly, Local Rule 41.2(b) provides that the "[f]ailure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." This mirrors Rule 41(b) of the Federal Rules of Civil Procedure, which affords the court discretionary authority to dismiss an action because of the failure to prosecute or to comply with any order of the court.  *See Link v. Wabash R.R. Co*., 370 U.S. 626, 633 (1962); *see also Lyell Theater Corp. v. Loews Corp*., 682 F.2d 37, 43 (2d Cir. 1982).

As a matter of course, courts in this District have dismissed actions, including habeas petitions, when litigants have failed to abide by either the Local Rules or orders related to address changes.  *See Shortell*, 2021 WL 3856738, at *2; *Montford v. Walsh*, No. 9:19-CV-1607 (LEK/CFH), 2020 WL 4284135, at *2-3 (N.D.N.Y. July 27, 2020); *Hill v. Donelli*, No. 9:05-CV-1245 (GLS/GHL), 2008 WL 4663364, at *1 (N.D.N.Y. October 20, 2008).  Therefore, it would

be an appropriate exercise of discretion for the district court to dismiss Petitioner's action for his

ongoing failure to notify the court of his current address, dating back to October 2021.

However, giving due consideration to the *pro se* Petitioner's right to due process, and as

all required pleadings have already been filed, I will evaluate the substance of Petitioner's claims

and Respondent's objections and issue a full report and recommendation to the district court.

Such action will also allow Petitioner a short fourteen day window to comply with his

obligations to notify the Court of his address change and to file any appropriate objections to this

report.  This Court recognizes that such accommodation will likely have no benefit to Petitioner,

as his failure to provide a current address prevents this Court from having a reliable method of

providing him a copy of this Report and Recommendation.  *See Ramadan v. Niagara Cty*., No.

12-CV-6425, 2014 WL 2865093, at *4 (W.D.N.Y. June 24, 2014) ("The Second Circuit has

emphasized the importance of first giving the *pro se* litigant a direct warning that his case will be

dismissed for failure to further prosecute . . . . However, any further attempt to notify Plaintiff

would be futile as the Court has no means by which to contact Plaintiff.").

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

The New York State Appellate Division, Third Judicial Department ("Appellate

Division") provided a concise summary of the undisputed facts that led to Petitioner's arrest and

conviction on burglary and robbery charges:

> In the early hours of August 2, 2012, [Petitioner], accompanied by four other
> individuals, drove a white suburban vehicle (hereinafter the SUV) to the home of
> Desiree Graziano.  [Petitioner] parked the vehicle in the driveway of a nearby
> property and remained in the SUV as the other four individuals broke into
> Graziano's home while she and three others were present and stole money and
> drugs.  When the police responded, the suspects fled the home and returned to the
> SUV.  [Petitioner] then engaged the police in a short high-speed chase before he
> drove the SUV off the road where it came to rest in a pond.  All five occupants

exited the SUV and attempted to flee.  [Petitioner] successfully escaped but was
subsequently arrested.

*People v. Williams*, 156 A.D.3d 1224, 1225 (3d Dep't 2017). (Dkt. No. 15-1 at 552-553.)

B.     **New York State Proceedings**

1.     **Grand Jury Indictment**

On August 30, 2012, a grand jury in Columbia County handed up an indictment charging

Petitioner and four others with one count of burglary in the first degree (New York Penal Law §

140.3), and one count of robbery in the first degree (New York Penal Law § 160.15).  (Dkt. No.

15-1 at 15-16.)

Petitioner's counsel filed a motion to dismiss or reduce the grand jury charges, but this

motion was denied on April 11, 2013 by Columbia County Court Judge Richard M. Koweek,

who would preside over the trial. (Dkt. No. 15-1 at 27-48, 107-119, 127-135.)  Judge Koweek

granted counsel's request to sever Petitioner's case from the other four defendants. (Dkt. No. 15-

1 at 129-130.)

2.     **New York State Court Trial and Appeals**

a.     **Three Day Trial**

Petitioner's jury trial commenced in Columbia County Court on December 3, 2013

before Judge Koweek. (Dkt. No. 15-4.)  Over the course of the three day trial, the prosecution

presented testimony from a number of witnesses including the occupants of the Graziano

residence, the Columbia County Sheriff's deputies who were first on the scene during the

burglary and attempted escape, and the New York State Troopers who pursued the SUV and

arrested Petitioner and the other occupants. (Dkt. Nos. 15-4 and 15-5.)  The prosecution also

relied upon the testimony of Joseph Speed, who was the subject of extensive cross-examination by Petitioner's counsel. (Dkt. No. 15-5 at 29-116.)

### b.    Trial Testimony of Joseph Speed

Mr. Speed testified that he had been one of the four passengers in the SUV driven by Petitioner along with individuals named Bobby Smith, Miguel Alcarez, and Jeremy Cobbins. (*Id.* at 30.)  He further testified that he had been arrested and pled guilty to Robbery in the First Degree and Burglary in the First Degree in connection with the Graziano home invasion, and was awaiting sentencing at the time of Petitioner's trial. (*Id.* at 31-35, 100-102.)

In describing the events leading up to the burglary and robbery, Mr. Speed testified that the five occupants of the SUV collectively "decided to go and take drugs and money" from the Graziano residence and split any of the proceeds from the robbery. (*Id.* at 38, 43-45, 61-62.)  He described Petitioner as "hesitant" and wanting to "sit outside in the car" while the other four entered the house. (*Id.* at 39.)  Mr. Speed also testified that he was "pretty sure" Petitioner knew one of the occupants of the house. (*Id.* at 37.)

According to Mr. Speed, Petitioner parked the car at a "little side pull-off" down the road from the Graziano residence. (*Id.* at 39.)  He testified that the four passengers all pulled on gloves and tied bandannas around their faces while in the car with Petitioner. (*Id.* at 40-41.)  The four individuals entered the house after smashing a window and chased the occupants into a bedroom. (*Id.* at 42, 65-69.)  During the course of the burglary, Mr. Speed found and pocketed "about a gram" of cocaine and an envelope with cash, but he and Mr. Smith, Mr. Alcarez, and

Mr. Cobbins fled the house after Columbia County Sheriff's deputies responded to a 911 call. (*Id*. at 42-43, 67, 69.)

Mr. Speed further testified that all four individuals ran to the SUV and repeatedly told Petitioner to "go" upon entering the vehicle. (Dkt. No. 15-5 at 46, 83-84.)  He described the SUV as pulling away "sort of quickly" but did not recall any squealing or spinning tires. (*Id*. at 84.) Mr. Speed recalled hearing a gunshot as Petitioner started the SUV and drove on to the road, and believed a bullet struck the vehicle.[2] (*Id*. at 46, 86-87.)  According to Mr. Speed's testimony, Petitioner sped up and was eventually pursued by a police car with its emergency lights and siren on. (*Id*. at 46, 94-95.)  After a short vehicle pursuit, Petitioner veered off the road, and all five occupants "jumped out" of the SUV and separated in an attempt to escape. (*Id*. at 46-47.)

During the course of his testimony, Mr. Speed admitted that he had sent a letter to Petitioner's counsel in October 2012 regarding the Graziano burglary, stating that Petitioner "didn't have any knowledge of what was going on, and that all he knew was that we was going there to pick up money owed." (*Id*. at 49, 102-104.)  He testified that he wrote this letter to "help out" a "friend" and that the statements in the letter were not true. (*Id*. at 49, 103.)

### c.    Petitioner's Trial Testimony

Petitioner testified in his own defense and contradicted key portions of Mr. Speed's testimony. (Dkt. No. 15-5 at 134-186.)  Petitioner testified that he was driving Mr. Speed, Mr. Smith, Mr. Alcarez, and Mr. Cobbins in the SUV, and that the group intended to celebrate Petitioner's recent birthday. (*Id*. at 142-143.)  According to Petitioner's testimony, Mr. Speed stated that he "wanted to go pick something up" from Desiree Graziano, a woman whom

---

[2]    At trial, Columbia County Deputy Sheriff Kris Bauhoff testified that he had fired one shot at the SUV as it left the scene. (Dkt. No. 15-4 at 232.)

Petitioner had met once.[3]  (*Id*. at 143, 171.)  Petitioner testified that he was not a participant in this conversation but believed that Mr. Speed was referring to cocaine. (*Id*.)  Petitioner further testified that the group had minimal conversation on the way to the Graziano residence, but never discussed any plans to commit burglary or robbery. (*Id*. at 144-148, 175.)

Petitioner testified that he followed Mr. Speed's directions to a nearby dirt driveway and backed in so that he would be facing the street. (*Id*. at 149.)  Petitioner stated that he never saw any of the passengers put on gloves or mask themselves with bandannas. (*Id*. at 148, 175-176.) According to his testimony, Petitioner reclined the driver's seat and fell asleep after the four passengers walked toward the Graziano residence. (*Id*. at 150, 177.)  Plaintiff estimated that the four passengers returned to the car about a half hour later. (*Id*. at 177.)  He testified that all four men "were panicking" as they entered the SUV and "kept saying: Go, go, go." (*Id*. at 150, 177.)

In his testimony, Petitioner described hearing a gunshot as he pulled out of the driveway, but the "[o]nly thought on [his] mind was just to get to safety." (*Id*. at 152, 155.)  He testified that he was driving "about the speed limit" as the SUV left this area. (*Id*. at 153, 181.)  Petitioner further testified that he eventually noticed an "emergency vehicle" following the SUV with lights and sirens, and followed Mr. Speed's instruction to pull over toward a field. (*Id*. at 156-157.) According to Petitioner, he was "really just panicking" during this time and "wasn't thinking straight." (*Id*. at 157.)  He testified that "everybody jumped and ran" while the SUV rolled to a

---

[3]     Petitioner also testified that he knew another woman who was present in the Graziano residence during the burglary, but that he had not known that she was staying there at the time. (Dkt. No. 15-5 at 171-172.)

stop in the field. (*Id*. at 156-157, 182.) Several hours later, Petitioner was arrested while walking along a nearby road. (*Id*. at 157, 183.)

During his testimony, Petitioner admitted that he had a prior felony conviction for burglary in the third degree, defined as entering a building with the intent to commit a crime. (Dkt. No. 15-5 at 165, 184.) Petitioner explained that he had been arrested after illegally entering a building in December 2008 while trying to fight someone inside. (*Id*. at 165-168.) Petitioner testified that he was not proud of his actions in December 2008 and had admitted guilt, but that he was innocent of the charges being presented to the jury and had not been involved in the burglary and robbery at the Graziano residence. (*Id*. at 166-167.)

### d.    Guilty Verdict and Sentencing

On December 6, 2013, the jury found Petitioner guilty of the lesser included offenses of burglary in the second degree (New York Penal Law § 140.25(2)) and Robbery in the Third Degree (New York Penal Law § 160.05). (Dkt. No. 15-6 at 161-162.) On April 2, 2014, Judge Koweek sentenced Petitioner as a second felony offender to concurrent prison terms of twelve years for the burglary conviction with five years of post-release supervision, and 3½ to 7 years for the robbery conviction. (Dkt. No. 15-7 at 23-26.) The court also revoked defendant's probation stemming from his previous burglary conviction and resentenced him to a prison term of 2⅓ to 7 years on that conviction, to run concurrently with the sentences imposed upon the new convictions. (Dkt. No. 15-7 at 24.)

### e.    State Court Appeal

On December 28, 2017, the New York Supreme Court Appellate Division Third Department unanimously affirmed Petitioner's conviction. (Dkt. No. 15-1 at 633-42); *Williams*, 156 A.D.3d at 1231. More specifically, the Appellate Division held, *inter alia*, that Petitioner's

9

challenge to the legal sufficiency of the evidence against him had not been preserved for appeal because Plaintiff's counsel did not renew his motion for dismissal at the close of trial, but that nevertheless, the jury's verdict was supported by the weight of the evidence; that accomplice testimony offered at trial was sufficiently corroborated by other evidence, including Petitioner's own testimony; that Petitioner's challenge to the sufficiency of the grand jury testimony was precluded; that the trial court's errors with respect to its *Molineux* and *Sandoval* rulings were harmless given the overwhelming evidence of Petitioner's guilt; that the trial court did not err in its jury instructions regarding accomplice testimony;  and that  Petitioner's sentence was not harsh and excessive. (Dkt. No. 15-1 at 552-561.)  The Appellate Division also rejected Petitioner's argument that counsel was ineffective in requesting that the trial court not instruct the jury regarding corroboration of accomplice testimony and failing to preserve Petitioner's legal sufficiency argument by moving for dismissal at the end of trial. (*Id*. at 559-60.)  On April 4, 2018, the New York Court of Appeals denied leave to appeal.  (Dkt. No. 15-1 at 567-568); *People v. Williams*, 31 N.Y.3d 1018 (N.Y. 2018).

### f.    State Court Motions to Vacate Conviction and Set Aside Sentence

On or about June 17, 2019, Petitioner filed *pro se* motions in the Columbia County Court[4] to vacate the judgment of conviction pursuant to New York CPL 440.10 and to set aside the sentence pursuant to CPL 440.20. (Dkt. No. 15-1 at 570-654.)  In his 440.10 motion, Petitioner argued that trial counsel was ineffective because: (1) his pretrial motion to dismiss excluded sworn statements from Mr. Alcarez and Mr. Smith attesting that Petitioner had no involvement in the planning or execution of the crime; (2) he misinformed and misled petitioner

---

[4]    Petitioner's initial motion papers incorrectly reference Columbia County Supreme Court. (Dkt. No. 15-1 at 570.)

about the need for an accomplice-corroboration jury charge; and (3) he failed to renew his motion for a trial order of dismissal at the close of the defense case. (Dkt. No. 15-1 at 573-575.) In the same motion, Petitioner argued that his conviction was based on legally insufficient evidence and that Petitioner was actually innocent of the crimes, as shown by new affidavits from Alcarez and Smith stating Petitioner was not involved in the planning and execution of the crimes. (*Id.* at 575-577.)

Petitioner's CPLR 440.20 motion asserted that his sentence was illegal because the statute provided for a maximum sentence of twelve years imprisonment, but the trial court gave Petitioner an effective sentence of seventeen years due to the addition of five years post-release supervision. (*Id*. at 578-584, 592.)  Petitioner also filed a reply in response to the government's opposition. (*Id*. at 676-682.)

Judge Koweek, the same judge who presided over Petitioner's trial, denied both motions on January 22, 2020. (*Id*. at 683-690.)  Petitioner's application for leave to appeal to the Appellate Division was denied on May 18, 2020. (*Id*. at 784.)  Petitioner's subsequent leave application seeking review by the New York State Court of Appeals was denied on July 29, 2020. *People v. Williams*, 35 N.Y.3d 1049 (2020); Dkt. No. 15-1 at 795.

### C.    Federal Habeas Proceeding

On August 28, 2020, Petitioner commenced this proceeding by the filing of a verified Petition for writ of habeas corpus.[5]  (Dkt. No. 1.)  On September 1, 2020, I issued an Order granting Petitioner approval to proceed in forma pauperis, and issued a Decision and Order pursuant to Local Rules of Procedure for Section 2254 cases and Section 2255 proceedings Rule

---

[5]      In April 2019, Petitioner voluntarily withdrew an earlier habeas petition so that he could attempt to fully exhaust his available state court remedies.  *Williams v. Lilley*, No. 9:19-CV-0384 (TJM/DJS), Dkt. Nos. 4, 5.

1.1(e)[6] directing, *inter alia*, Respondent to answer the Petition. (*See generally* Dkt. Nos. 3, 4.) On November 25, 2020 and December 28, 2020, I granted Respondent's successive motions for an extension of time to answer. (Dkt. Nos. 5, 6, 7, 8.)  On January 26, 2021, Respondent filed a motion seeking permission to file an oversized brief. (Dkt. No. 9.)  I granted Respondent's motion on January 27, 2021. (Dkt. No. 10.)

On February 3, 2021, Respondent filed an answer to the Petition, a memorandum of law supporting the answer, and a compilation of the relevant state court records. (Dkt. Nos. 13, 14, 15.)  On February 4, 2021, I issued an order advising Petitioner of the deadline to file a traverse or reply, if any, on or before March 8, 2021. (Dkt. No. 16.)  On March 8, 2021, Petitioner filed a request for an extension of time to file his traverse. (Dkt. No. 17.)  On March 9, 2021, I granted Petitioner's request and directed him to file his traverse, if any, no later than April 8, 2021.  (Dkt. No. 18.)

Plaintiff did not file a traverse by the extended deadline.  Therefore, the matter is considered fully briefed, and it has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

### D.    Summary of Parties' Arguments

Petitioner argues that he is entitled to habeas corpus relief because (1) the evidence presented against Petitioner was legally insufficient; (2) Petitioner is actually innocent of the charges; (3) the trial court erred in allowing Petitioner's prior burglary conviction to be introduced as evidence; (4) Petitioner's trial counsel was ineffective; and (5) Petitioner's sentence is invalid because it includes five years of post-release supervision**.** (Dkt. No. 1.)

---

[6]    This was previously N.D.N.Y. L.R. 72.4(e).

Generally, Respondent makes the following arguments in support of the answer: (1) Petitioner's legal sufficiency claim is partially non-cognizable, unexhausted, procedurally barred, and meritless; (2) Petitioner's actual innocence claim is non-cognizable and meritless; (3) Petitioner's claims challenging the admission of his prior burglary conviction are unexhausted and meritless; (4) Petitioner's ineffective assistance of counsel claim is meritless; and (5) Petitioner's challenge to the inclusion of post-release supervision in his sentence is non-cognizable. (*See generally* Dkt. No. 13 at 24-52 [Resp't's Mem. of Law].)

Petitioner asserts that his conviction was not supported by legally sufficient evidence under both the federal and New York state constitutions. First, Respondent argues that, as a threshold matter, state constitutional claims are non-cognizable as a matter of law. (Dkt. No. 13 at 24.) Respondent further asserts that Petitioner's federal constitutional claim is unexhausted and procedurally defaulted, and thus barred from federal habeas review, because Petitioner failed to preserve the issue for appellate review at trial in accordance with state law, and further failed to raise the issue in his application for leave to appeal to the New York Court of Appeals. (*Id.* at 24-28.) Finally, Respondent argues that Petitioner's legal sufficiency claim is meritless, because the record demonstrates that the jury had more than sufficient evidence to find that Petitioner was guilty. (*Id.* at 28-33.)

Petitioner also asserts his actual innocence, framing his argument in terms of the state and federal constitution. (Dkt. No. 1 at 10-11.) Respondent again asserts that the state constitutional claim is non-cognizable in federal habeas proceeding, and further contends that the Supreme Court has not recognized federal claims asserting actual innocence in non-capital cases. (Dkt. No. 13 at 34-37.) Respondent further asserts that, if the court were to consider the actual innocence argument on its merits, it would fall far short of the high standard for such claims.

(*Id*.)  Specifically, Respondent contends that the jury reasonably found Petitioner guilty based on the evidence before it, and that Petitioner has not provided any credible or compelling new evidence to alter that conclusion. (*Id*. at 35-37.)

With regard to Petitioner's claims that that the trial court improperly allowed evidence of his prior burglary conviction, Respondent argues that such claims are unexhausted and procedurally defaulted, because Petitioner had never previously raised any federal claims related to these issues. (Dkt. No. 13 at 47-48.)  Respondent further argues that the claims are without merit because Petitioner has not shown any impact on the fundamental fairness of the state court proceeding. (*Id*.at 48-51.)

Respondent addresses Petitioner's ineffective assistance of counsel claim solely on the merits and asserts that Petitioner's claims of substantive legal error at the indictment, trial, and post-trial stage are inconsistent with the available record. (*Id*. at 37-46.)

Finally, Respondent contends that the court should reject Petitioner's challenge to his sentence, because the overall sentence and the post-release supervision are well within the range allowed under state law. (*Id*. at 51-52.)

## III.    LEGAL STANDARDS

Many of Petitioner's claims and Respondent's arguments raise similar issues of state law, exhaustion, and procedural default.  In the interest of efficiency, I will recite the generally applicable legal standards here, and apply those standards to the individual arguments as they arise.

### A.    Legal Standard Governing Review of a *Habeas Corpus* Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) a federal court may grant habeas corpus relief with respect to

a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (Sotomayor, J.).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 563 U.S. at 181. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant

federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001); *see Willson v. Sellars*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state court decision on the merits "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning," but that "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision").

### B.    Legal Standard Governing State Law Claims in Habeas Proceeding

State courts are "the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *see also Ring v. Arizona*, 536 U.S. 584, 603, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).  Therefore, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Even where there has been no pertinent decision by the state's highest court, and "we are left only with the state intermediate court's interpretation of the terms in the state statute[,] ... we are bound by that interpretation." *Ponnapula v. Spitzer*, 297 F.3d 172, 183 (2d Cir.2002); *see, e.g., McGuire*, 502 U.S. at 66, 67–68, 112 S.Ct. 475 (rejecting federal court's holding that a state-intermediate-court error with respect to state law constituted a basis for federal habeas relief).  "Simply put, "'federal habeas corpus relief does not lie for errors of state law.'" *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) (quoting *McGuire*, 502 U.S. at 67, 112 S.Ct. at 475).

### C.    Legal Standard Governing Exhaustion of Remedies

Before seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately

protect his rights.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. §

2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  The exhaustion doctrine

recognizes "respect for our dual judicial system and concern for harmonious relations between

the two adjudicatory institutions."  *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d

Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at

the core of the exhaustion requirement.").  Although both federal and state courts are charged

with securing a state criminal defendant's federal rights, the state courts must initially be given

the opportunity to consider and correct any violations of federal law.  *Galdamez*, 394 F.3d at 72

(citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)).  "The chief purposes of the

exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose

fundamental legal basis was substantially different from that asserted in state court."  *Daye*, 696

F.2d at 192 (footnote omitted).

> This exhaustion requirement is satisfied if the federal claim has been "fairly present[ed]"

to the state court.  *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*,

404 U.S. 270, 275 (1971)).  A claim has been "fairly presented" if the state court was apprised of

"both the factual and the legal premises of the claim [the petitioner] asserts in federal court."

*Daye*, 696 F.2d at 191.  Thus, "the nature or presentation of the claim must have been likely to

alert the court to the claim's federal nature."  *Id.* at 192.

> Significantly, "[t]he exhaustion doctrine 'requires only that a petitioner present his claim

once on direct or collateral review.'"  *Salahuddin v. Strack*, 97-CV-5789, 1998 WL 812648, at

*5 (E.D.N.Y. Aug. 12, 1998) (quoting *Sanford v. Senkowski*, 791 F. Supp. 66, 69 (E.D.N.Y.

1992)); *see Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2d Cir. 1977) ("In order to meet the

exhaustion requirement, a petitioner must have presented his claim to the state courts at least

once, on direct or collateral review."). "Therefore, even if a claim is not raised at trial or on direct appeal, a claim pursued throughout a full round of state post-conviction proceedings is exhausted." *Salahuddin*, 1998 WL 812648, at \*5 (citing, *inter alia, Castille v. Peoples*, 489 U.S. 346, 350-51 (1989)); *see also Harvey v. Portuondo*, 98-CV-7371, 2002 WL 2003210, at \*5 (E.D.N.Y. Aug. 5, 2002). Unexhausted claims are generally barred from habeas corpus review by the rules concerning procedural default. *See Aparicio*, 269 F.3d at 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 722, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).

### D.    Legal Standard Governing Procedural Default

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and that actual prejudice results, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536-539, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To meet the "cause" requirement, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012); *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546. Prejudice requires a petitioner to show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (quoting *United States v. Frady*, 456 U.S. 154, 170 (1982).

Additionally, there is an exception to the procedural bar in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his

constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief."). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851*; see also Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *House*, 547 U.S. at 536-37, 126 S.Ct. 2064 (quoting *Schlup*, 513 U.S. at 327, 115 S.Ct. 851); *see also Doe v. Menafee*, 391 F.3d 147, 160-62 (2d Cir. 2004).

## IV.    LEGAL FINDINGS AND ANALYSIS

For the reasons stated in Respondent's memorandum of law, I find that (1) Petitioner's legal sufficiency claim, to the extent it relies upon federal law, is unexhausted and procedurally barred, and if the Court were to consider the substance of Petitioner's arguments, meritless; (2) Petitioner's actual innocence claim is non-reviewable and, if the Court were to consider the substance of Petitioner's arguments, meritless; (3) Petitioner's challenge to the admissibility of his prior conviction for burglary is unexhausted and, if the Court were to consider the substance of Petitioner's arguments, meritless; (4) Petitioner's ineffective assistance of counsel claim is exhausted but meritless; and (5) Petitioner's excessive sentencing claim is non-reviewable. To the extent that Petitioner has attempted to raise or re-litigate state law claims in this proceeding, I

find that no federal habeas relief is available.  As a result, I recommend that all of his claims for

habeas relief be denied and the Petition be dismissed.  The analysis below is

intended to supplement, but not supplant, the lengthy legal analysis provided by Respondent.

### A.    Whether Petitioner's Legal Sufficiency Claim Should be Dismissed

As discussed previously, Plaintiff contends that the evidence presented against him is

legally insufficient under both the New York State and the federal constitution.  After carefully

considering the matter, this court recommends dismissal of Petitioner's legal sufficiency claim.

To the extent that Petitioner's legal sufficiency claim is based upon state law, that portion

of his claim is non-cognizable in a federal habeas proceeding.  *McGuire*, 502 U.S. at 63, 112 S.

Ct. at 477, 116 L. Ed. 2d at 385.  The record before this court also shows that Petitioner's federal

legal sufficiency claim is unexhausted and procedurally defaulted because Petitioner did not raise

the federal argument in his leave application to the Court of Appeals. (Dkt. No. 15-1 at 562-566.)

Specifically, Petitioner's leave application requested review by the Court of Appeals

> of his claims that the verdict was against the weight of the evidence; that County
> Court's agreement not to instruct the jurors on the corroboration requirement for
> accomplice at law testimony was a fundamental error; that he was denied his State
> and Federal right to the effective assistance of counsel; and that County Court's
> error in its *Molineux* and *Sandoval* rulings constituted reversible error.

(Dkt. No. 15-1 at 562.)

Although Petitioner made a sufficiency of the evidence claim to the Appellate Division

on direct appeal, habeas review is unavailable because Petitioner's failure to "explicitly alert"

New York Court of Appeals to the issue "does not fairly present such claims." *Jordan v.*

*Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) (holding that "counsel may not transfer to the state

courts the duty to comb through an applicant's appellate brief to seek and find arguments not

expressly pointed out in the application for leave); *see also Smith v. Duncan*, 411 F.3d 340, 345

(2d Cir. 2005) (finding evidentiary issue procedurally defaulted because petitioner's

correspondence to the New York Court of Appeals never raised the issue).  Although Petitioner's application to the New York Court of Appeals argued that the conviction was against the weight of the evidence, there is a distinct difference between "weight of the evidence" under state law and "legal sufficiency" under federal law.  *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 343 (N.Y.N.D. 2018) ("Recent cases which have examined the nature of the weight of the evidence and sufficiency claims have concluded that "the two claims are no more than somewhat similar.") (quoting *Pham v. Kirkpatrick*, 209 F. Supp. 3d 497, 512 (N.D.N.Y. 2016)), *aff'd* 711 F. App'x 67 (2d Cir. 2018).  Thus, a weight of the evidence claim may not "stand in" for a legal sufficiency claim.  *See Romero v. Miller*, No. 9:18-CV-381, 2019 WL 5743500, at *5-6 (N.D.N.Y. Apr. 18, 2019), *report-recommendation adopted*, 2019 WL 5703612 (N.D.N.Y. Nov. 5, 2019), *cert. of appeal. denied*, No. 19-4033, 2020 WL 2945010 (2d Cir. May 14, 2020 (collecting cases).

Because petitioner's federal legal sufficiency claim is unexhausted, petitioner has no avenue in state court to exhaust his claim.  *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991); N.Y. Crim. Proc. Law § 440.10 (2)(c) (barring collateral review if a claim could have been raised on direct review).  Therefore, he is barred from litigating the merits of that claim in federal habeas proceedings, absent a showing of cause and prejudice.  *Grey*, 933 F.2d at 121. The closest Petitioner comes to arguing cause is the ineffective assistance of counsel claim elsewhere in his habeas petition, but as discussed below (Section IV (D), *infra*), this claim is without merit and therefore cannot serve as "cause" for a procedural default.  *Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wright v. LaManna*, No. 9:18-CV-1063, 2021 WL 5095292, at *8 n.5 (MAD/TWD) (N.D.N.Y. April 21, 2021), *report and recommendation adopted*, 2021 WL 4452094 (September 29, 2021) (stating principle that

ineffective assistance of counsel may be sufficient to show cause only when counsel's performance was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel).

Additionally, on the record before the Court, there is no basis to conclude that the failure to consider the merits of Petitioner's legal sufficiency claim would result in a fundamental miscarriage of justice or other prejudice.  Although Petitioner raises an actual innocence claim, it is also without merit.  (Section IV (B), *infra*).  Accordingly, the procedural default bars federal review of Petitioner's legal sufficiency claim, and this Court recommends that portion of his Petition be denied and dismissed on this ground.

Even if this court considered Plaintiff's legal sufficiency claim on the merits, it would still recommend dismissal of this claim.  A convicted defendant seeking federal habeas review for sufficiency of evidence to support a conviction bears a heavy burden.  *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 822 (2d Cir. 2000); *Flowers v. Fisher*, 296 Fed App'x 208, 210 (2d Cir. 2008).  A petitioner making this claim is entitled to habeas relief only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

When making an analysis concerning sufficiency of the evidence, the reviewing court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor[,] and must defer to the credibility assessments made by the jury without substituting its view for that of the factfinder.  *Fama*, 235 F.3d at 811; *see also Jackson*, 443 U.S. at 319.  Viewing the evidence in this light, the habeas court must uphold the verdict "if any rational trier of fact could have found the essential elements of the crime [of conviction] beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319 (emphasis in original).

Here, Petitioner's legal sufficiency argument is essentially that the jury should have believed his testimony over that of Joseph Speed. (Dkt. No. 1 at 10, 12.)  Arguments that merely contest the credibility of the prosecution's evidence are insufficient to disturb a jury verdict. *See Marshall v. Lonberger*, 459 U.S. 422, 432-435 (1983) (holding that a federal court reviewing a habeas petition may not revisit the fact-finder's credibility determinations); *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (noting that a habeas court is not free to make a credibility judgment about the evidence or weight conflicting testimony).  Here, as in many cases,

> the jury's decision was largely a matter of choosing whether to believe [Petitioner's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence . . . We cannot say that no reasonable jury could have found guilt beyond a reasonable doubt on all the evidence.

*Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981).  Based on the record before this Court, it does not appear "more likely than not that no reasonable juror would have convicted. *Schlup*, 513 U.S. at 329.  Accordingly, if this Court were able to consider the merits of Petitioner's legal sufficiency claim, it would still recommend dismissal.

### B.    Whether Actual Innocence Claim Should be Dismissed

Petitioner claims that he is actually innocent of the burglary and robbery charges, and is thus being held in violation of the New York State and federal constitutions. (Dkt. No. 1 at 10.)  As before, Petitioner's state law claim is not cognizable in this federal habeas proceeding. *McGuire*, 502 U.S. at 63, 112 S. Ct. at 477, 116 L. Ed. 2d at 385.  Petitioner faces a similar obstacle to his federal claim.

"Once guilt is ... established ... a federal habeas court will not relitigate the question of guilt for a state defendant who protests his actual innocence ... [r]ather, a federal habeas court

will review state convictions for constitutional error." *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019). The United States Supreme Court has never ruled that a freestanding claim of actual innocence may serve as a basis for federal habeas relief, so it is generally accepted that a purported error by a state court in declining to hear an actual innocence claim in a non-capital case cannot be contrary to, or an unreasonable application of, clearly established federal law. *See Cosey v. Lilley*, 62 F.4th 74, 85 n.11 (summarizing current Supreme Court caselaw). Therefore, habeas review is unavailable for Petitioner's actual innocence claim, and it should be dismissed.

Even if Petitioner's actual innocence claim were cognizable in this habeas proceeding, this court would recommend dismissal on the merits. Petitioner has presented two affidavits from two individuals, Miguel Alcarez and Bobby Smith, who were separately convicted in connection with the burglary and robbery at the Graziano residence. (Dkt. No. 1-1 at 32-33.) Using similar language, Mr. Alcarez and Mr. Smith provided sworn written testimony that Petitioner had no knowledge of any plans to commit burglary or robbery, and that when the four individuals returned to the car while fleeing from the police, their only instructions were to "Go, Go, Go." (*Id.*) Mr. Alcarez and Mr. Smith each stated that this information had been provided to Petitioner's counsel in 2012, prior to his trial. (*Id.*)

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to avoid the "expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.Ct. 1924, 1927, 185 L.Ed.2d 1019 (2013). The Supreme Court cautioned, however, that "tenable actual-innocence gateway pleas are rare," and that a "petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him

guilty beyond a reasonable doubt." *Id.* The Supreme Court has also made clear that if the federal courts recognized a free-standing actual innocence claim that it would impose a higher threshold, making the required showing "extraordinarily high." *See Herrera v. Collins*, 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (noting that, "in capital cases," "the threshold showing for [a freestanding innocence claim] would necessarily be extraordinarily high"); *House,* 547 U.S. at 520, 126 S.Ct. at 2068, 165 L.Ed.2d 1 (2006) ("whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it". . . despite having "cast considerable doubt on his guilt."). Based on that understanding, this court is confident that Petitioner's showing here, based solely on affidavits placing Petitioner at the scene of the crime but absolving him of any criminal liability, would not meet the extraordinary high standard for a free-standing actual innocence claim. *See, e.g., Waters v. Lilley*, No. 17-CV-8258 (GHW) (RWL), 2023 WL 3592230, at *15 (co-defendant's post-conviction affidavit stating petitioner had not been part of narcotic sale did not meet "actual innocence" threshold to excuse late habeas filing); *Sabir v. United States*, 12 Civ. 8937 (LAP), 2020 WL 6131419, at *5 (S.D.N.Y. October 16, 2020) (finding that affidavits from convicted co-conspirators stating petitioner is innocent did not meet "actual innocence" standard to excuse untimely habeas filing).

Accordingly, this Court recommends that Petitioner's actual innocence claim be dismissed as non-cognizable and without merit.

### C.    Whether Petitioner's *Molineux* and *Sandoval* Claims Should Be Dismissed

Applying New York law, Judge Koweek held a pre-trial hearing to determine whether Petitioner's prior burglary conviction could be introduced as evidence for limited purposes. *People v. Molineux*, 61 N.E. 286, 293 (N.Y. 1901) (establishing rule that evidence of prior bad acts cannot be used to prove that the defendant has a propensity to commit such acts but may be

used for other purposes); *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) (setting out procedure under which a New York trial court determines, in advance, whether evidence of prior convictions is admissible in the event that the defendant testifies).  Judge Koweek held that the prosecution could present evidence of this prior conviction only so far as it proved the element of intent, or to impeach Petitioner's testimony if he testified.  (Dkt. No. 15-1 at 285-288.)  At trial, the prosecution relied on the prior burglary conviction to refute Petitioner's contention that he had no knowledge of the planned burglary when he drove to the home, and to attack the credibility of Petitioner's testimony.  Judge Koweek revisited this issue when he allowed the prosecution to submit a certificate of conviction for this prior burglary following Petitioner's testimony. (Dkt. No. 15-5 at 125-129.)

With the assistance of new counsel, Plaintiff challenged the trial court's *Molineux* and *Sandoval* rulings on direct appeal, arguing that the admission of his prior burglary conviction was unduly prejudicial under state law. (Dkt. No. 15-1 at 249-252.)   The Appellate Division, Third Department agreed with Petitioner that the trial court's ruling violated *Molineux* and *Sandoval*, but held that these errors were harmless, "because the evidence of [Petitioner's] guilt was overwhelming and there is no significant probability that [Petitioner] would have been acquitted in the absence of the errors." (Dkt. No. 15-1 at 778.)  Petitioner challenged this conclusion in his unsuccessful application for review by the Court of Appeals. (Dkt. No. 15-1 at 563.)

Petitioner's state court appeals, and the resulting state court decision, are entirely premised on an interpretation of state law.  Because the *Molineux* and *Sandoval* claims were not presented to the state courts in federal constitutional terms, neither is reviewable by this court in a habeas proceeding.  *See Steinhilber v. Kirkpatrick, M*., No. 18 CIV 1251 (VB) (JCM), 2020

WL 9074808, at *13 (S.D.N.Y. Aug. 21, 2020) (collecting cases denying *Molineux* claim as unexhausted where petitioner did not argue on direct appeal to state court that the evidentiary error violated his federal constitutional rights and noting that *Molinuex* does not "call to mind a specific right protected by the Constitution"), *report and recommendation adopted*. 2021 WL 1254554, at *2 (S.D.N.Y. April 5, 2021); *Meeks v. Artus*, No. 10 Civ. 4021 (BMC), 2011 WL 703938, at * (E.D.N.Y. February 17, 2011) (finding *Sandoval* claim was unexhausted where appellate argument addressed state law issues and "never mentioned the Constitution, the Due Process clause, or any federal authority"); *see also Jackson v. Lee*, No. 10 CIV 3062, 2010 WL 4628013, at *22 (S.D.N.Y. Nov.16, 2010) (holding that *Sandoval* claim raised entirely in state law terms is deemed exhausted but procedurally barred because "[w]hen addressing his *Sandoval* claim ... appellate counsel merely relied on two state cases and never mentioned any federal constitutional issues").

Even if this court were to consider the merits of these claims, Petitioner has not established that the evidentiary rulings denied him a fair trial under clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). The Supreme Court has not yet held that the admission of evidence of a defendant's prior crimes to show the defendant's criminal propensity violates the Due Process Clause. *See McGuire*, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); *see also, e.g., Williams v. Jacobson*, No. 15-CV-5319 (ER) (JLC), 2016 WL 4154700, at *20 (S.D.N.Y. Aug. 5, 2016) ("[T]here is no clear Supreme Court precedent holding that the admission of propensity evidence (even if prejudicial) is unconstitutional."), *report and recommendation adopted*, 2016 WL 7176648 (S.D.N.Y. Dec. 7, 2016); *Stenson v. Heath*, No. 11-CV-5680 (RJS) (AJP), 2012 WL 48180, at *15 (S.D.N.Y.

Jan. 10, 2012) ("[E]ven assuming [the petitioner] was able to successfully argue that [the state court] misapplied New York law in allowing evidence of uncharged crimes, he still would not be eligible for habeas relief because there is no Supreme Court precedent that such evidence gives rise to a constitutional violation."), *report and recommendation adopted*, 2015 WL 3826596 (S.D.N.Y. June 19, 2015). When there is no Supreme Court holding on a given issue, 'it cannot be said that the state court unreasonably applied clearly established Federal law' within the meaning of AEDPA." *Smith v. Wenderlich*, 826 F.3d 641, 649 (2d Cir. 2016).

 Petitioner has also failed to show how the admission of evidence related to his prior burglary conviction was so egregious or fundamentally unfair as to violate due process. "For an erroneous admission of ... unfairly prejudicial evidence to amount to a denial of due process, the item must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Dunnigan v. Keane*[7], 137 F.3d 117, 125 (2d Cir. 2009) (quoting *Johnson v. Ross,* 955 F.2d 178, 181 (2d Cir.1992)). As part of the defense case, Petitioner testified that he had pled guilty to burglary in the third degree in 2008, but the facts were readily distinguishable from the case at trial. Petitioner explained that he had been arrested after entering a building to fight someone inside. (Dkt. No. 15-5 at 164-166.) Petitioner's counsel reinforced this argument to the jury during his summation. (Dkt. No. 15-6 at 66-68.) The jury instructions also addressed the issue, explaining that the prior burglary conviction was not evidence of Petitioner's guilt or his predisposition to commit similar crimes. (Dkt. No. 15-6 at 107-108.) The Supreme Court and the Second Circuit have generally

---

[7]    The evidentiary issue in *Dunnigan* was the admissibility of a witness's identification of petitioner as a suspect from a "highly suggestive" photo array. 137 F.3d at 129. The Second Circuit's holding on photo identification was abrogated by the U.S. Supreme Court in *Perry v. New Hampshire*, 565 U.S. 228, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012).

encouraged the presumption that jurors will follow the trial court's instructions. *Penry v. Johnson*, 532 U.S. 782, 799, 121 S.Ct. 1910, 1922, 150 L.Ed.2d 9 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987)); *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 733, 145 L.Ed.2d 727; *United States v. Stewart*, 590 F.3d 93, 124 (2d Cir.2009).

Moreover, as the state appellate court found, there was considerable other evidence for a reasonable jury to conclude that Petitioner was guilty, including Joseph Speed's testimony regarding the planning and execution of the crime, the testimony of the law enforcement officers who responded to the burglary and pursued Petitioner's vehicle, and Petitioner's own testimony placing him behind the steering wheel during the planning and execution of the burglary and attempted escape. *People v. Williams*, 156 A.D.3d at 1226-1229 (Dkt. No. 15-1.)

Therefore, this court recommends dismissal of Petitioner's *Molineux* and *Sandoval* claims as unexhausted, procedurally defaulted, and meritless.

### D.    Whether Ineffective Assistance of Counsel Claim Should Be Dismissed

In his brief to the Appellate Division, Third Department, Petitioner argued that his trial counsel erred by (1) failing to include statements by Petitioner's co-defendants attesting to his innocence as part of in his pre-trial dismissal motion; (2) misinforming Petitioner regarding the decision not to request an accomplice-corroboration jury charge; and (3) failing to renew Petitioner's motion for a trial order of dismissal at the close of the defense case.  He repeated these claims in his application for leave to appeal to the Court of Appeals and 440.10 motion, from which the Appellate Division denied leave to appeal. (Dkt. No. 15-1 at 570-654, 785-794.) Accordingly, Petitioner adequately exhausted his ineffective assistance of counsel claims to permit this Court to review their merits.

Under the well-established standard governing ineffective assistance of counsel claims,

> the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires showing that
> counsel's errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord, Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007).

To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690; *accord, Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015). An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort made to "eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689; *see also Rivas*, 780 F.3d at 547 (quoting *Strickland*, 466 U.S. at 689) (noting the court's "scrutiny of counsel's performance must be 'highly deferential'").

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *see also Murden*, 497 F.3d at 198 ("Under *Strickland*, a defendant must show that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted)).

### 1.    Pre-Trial Motion

Prior to Petitioner's trial, his counsel filed a motion on his behalf seeking to have the charges dismissed or reduced. (Dkt. No. 15-1 at 27-48, 107-119, 127-135.) Counsel argued that the grand jury indictment was based on defective testimony from a state police investigator who

paraphrased statements from Alcarez, Smith, and Speed in a manner that exaggerated Petitioner's role in the planning and execution of the crime, and that the evidence presented to the grand jury misrepresented Petitioner's limited role as the driver of the SUV. (*Id.* at 37-40, 109-112.)  Petitioner contends that his counsel should also have included statements, purportedly provided by Alcarez, Smith, and Speed, stating that Petitioner did not know about the planned burglary and robbery and panicked when the actual home invaders raced back to the car with the police in pursuit and directed him to "Go, Go, Go!" (Dkt. No. 1 at 5.)  Failure to do so, Petitioner contends, violated his constitutional right to effective assistance of counsel.

Respondent has provided extensive caselaw demonstrating that such a motion would not have provided a legal basis for dismissal of the indictment.  *See, e.g., People v. Swamp*, 84 N.Y. 2d 725, 730 (1995) (finding court considering motion to dismiss an indictment for legal insufficiency "must consider whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted – and deferring all questions as to the weight or quality of the evidence – would warrant conviction."); *People v. Galatro*, 84 N.Y.2d 160, 163 (1994) (holding that all questions as to quality or weight of the proof should be deferred until trial).

Effective assistance of counsel does not require the filing of every possible motion, rather only those that have a solid foundation.  *See Carpenter v. Unger*, Nos. 9:10-CV-1240, 2014 WL 4105398, at *24 (N.D.N.Y. August 20, 2014) (refusal of client's request to file frivolous motion was not ineffective assistance of counsel).  "The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which [a p]etitioner [i]s entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001).  Therefore, counsel's failure to challenge the legal sufficiency of the indictment based on the accomplice affidavits does not meet the performance prong of *Strickland*.  Plaintiff has also failed to show prejudice, due to the

low likelihood that the indictment would have been dismissed.  *See Wynn v. Lee*, No. 9:19-CV-209 (BKS/CFH), 2022 WL 19405961, at *17 (N.D.N.Y. December 12, 2022) (finding petitioner did not demonstrate a reasonable probability that indictment would have been dismissed but for counsel's alleged failure to investigate exculpatory evidence).

### 2.    Jury Instruction Regarding Accomplice Corroboration

New York law provides that a "defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense."  *See* N.Y. Crim. Proc. Law § 60.22(1).  An accomplice is defined as "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in ... [t]he offense charged ... or ... [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged." N.Y. Crim. Proc. Law § 60.22(2); see also *People v. Caban*, 5 N.Y.3d 143, 152, 800 N.Y.S.2d 70, 833 N.E.2d 213 (N.Y.2005)) (quoting statute).  "Where the undisputed evidence establishes that a witness is an accomplice, the jury must be so instructed but, if different inferences may reasonably be drawn from the proof regarding complicity ... the question should be left to the jury for its determination[.]"  *Caban*, 5 N.Y.3d at 152, 800 N.Y.S.2d 70, 833 N.E.2d 213  These corroboration requirements are "minimal," requiring "only enough nonaccomplice evidence to assure that the accomplices have offered credible probative evidence" that connects "the accomplice evidence to the defendant."  *See Valerio v. Phillips*, No. 02-CV-901(RJA), 2008 WL 305007, at *14 (W.D.N.Y. Feb. 1, 2008) (summarizing state law regarding accomplice corroboration).

Petitioner contends that trial counsel erred in failing to request a jury instruction addressing New York state law requirements that accomplice testimony be corroborated. (Dkt.

No. 1 at 5; Dkt. No. 15-6 at 5-6.)  The Appellate Division considered the identical argument during the course of Petitioner's appeal, finding that "[t]he record reflects that trial counsel and [Petitioner] requested that the court not give the charge as they were concerned that referring to Speed as an 'accomplice' would confuse the jury in light of the fact that [Petitioner] steadfastly claimed that he was an unwitting participant who was unaware of the codefendants' plan to rob Graziano." *People v. Williams*, 156 A.D.3d 1224,1230-1231 (3d Dep't 2017); Dkt. No. 15-1 at 554-557.  The Appellate Division further found that Petitioner "failed to establish the absence of a strategic reason for counsel's decision," and that such decision did not constitute ineffective assistance of counsel, "in light of [the Appellate Division's] determination that the conviction was not against the weight of the evidence."  *Id.*

The Appellate Division's reasoning is sound, and consistent with federal law.  Trial counsel's strategic decision to avoid potential jury confusion regarding the term "accomplice," made with Petitioner's consent on the record, does not meet the performance prong of *Strickland*. *See Valerio*, 2008 WL 305007, at *16 (finding that trial counsel's attempt to distance client from convicted drug dealer by avoiding accomplice instruction did not render his performance objectively unreasonable); *Clark v. Sup't of Wende Corr. Fac.*, No. 6:14-CV-06070(MAT), 2015 WL 6142864, at *6 (W.D.N.Y. Oct. 19, 2015) (finding that "it was not unreasonable for counsel to decide that requesting an accomplice charge [ ] might have undermined" other aspects of defense strategy); *Ramos v. Artuz*, 40 F.Supp.2d 206, 208 (S.D.N.Y.1999) ("[Petitioner] quarrels with his counsel's decisions not to, for example, request an accomplice corroboration instruction . . . . While different strategic decisions could have been made, the ones that were made fell within the range of constitutional effectiveness. Even though counsel's strategy was ultimately unsuccessful, that fact does not render his assistance constitutionally ineffective.").

Petitioner has likewise failed to meet the prejudice prong of *Strickland,* because there was sufficient independent evidence, including Petitioner's own testimony and his behavior after the police responded to the burglary, that a jury could reasonably have relied upon to reach a guilty verdict. *See United States v. Morrison*, 153 F.3d 34, 49 (2d Cir.1998) (encouraging deference to "the jury's choice of the competing inferences that can be drawn from the evidence,"); *Valerio*, 2008 WL 305007, at *16 (holding that in light of substantial evidence of guilt apart from accomplice testimony, there was no "reasonable probability" that the verdict would have been favorable had the jury been instructed on New York's accomplice corroboration requirement); *Hicks v. Ercole*, No. 09–CV–2531 (AJN), 2015 WL 1266800, at *25 (S.D.N.Y. March 18, 2015) (finding no prejudice where petitioner had not shown any "reason to believe that the jury verdict would have come down differently if [his] desired instruction had been given").

### 3.    Failure to Renew Motion to Dismiss

Under New York law, a defendant may move the trial court for an order of dismissal "dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense ...." *See* N.Y. Crim. Proc. Law § 290.10(1).  In this case, Petitioner's counsel filed an unsuccessful motion for a trial order of dismissal at the close of the prosecution's case. (Dkt. No. 15-5 at 130-131.)  He then called Petitioner as the only defense witness. (*Id*. at 135-185.)  Following Petitioner's testimony, the trial court discussed the admissibility of certain defense exhibits and held a jury-charge conference. (*Id.* at 186-189.)  Neither the prosecution, defense, nor the trial court recognized that defense never formally rested its case until just prior to summation before the jury. (Dkt. No. 15-6 at 19-20.)  Petitioner's counsel corrected this oversight but did not renew his motion for a trial order of dismissal.  (Dkt. No. 15-6 at 20.)

Given the context, it does not appear that the failure to renew the motion for dismissal was a strategic choice.  Petitioner may thus have a colorable argument that trial counsel's error meets the performance prong of *Strickland*.  However, the court need not resolve the performance question before dismissing Petitioner's claim.  *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.").  Petitioner has not shown sufficient prejudice arising from counsel's failure to renew the motion to dismiss, because there is no indication that a renewed motion would have resulted in a different trial result or that the omission deprived Petitioner of a fair trial.  As discussed above, Petitioner's original motion was denied, and the only substantive new evidence presented by the defense was Petitioner's own testimony, which required a credibility evaluation by the jury.  Multiple courts within this Circuit have reached the same conclusion when presented with similar facts.  *See DeLee v. Graham*, No. 9:11-CV-653 (MAD/CFH), 2013 WL 3049109, at *24 (N.D.N.Y. June 17, 2013) (rejecting ineffective assistance claim where counsel did not renew motion to dismiss and thus failed to preserve issues on appeal); *Agee v. Brandt*, No. 10-CV-06303T, 2011 WL 3800032, at *7 (W.D.N.Y. Aug. 26, 2011) (rejecting ineffective assistance of counsel claim where significant evidence of guilt provided no basis for court to conclude that a renewed motion to dismiss would have been successful); *Delatorres v. Lempke*, No. 08–CV–0183, 2011 WL 1198565, at *4 (W.D.N.Y. Mar. 29, 2011) (denying petitioner's ineffective assistance of trial counsel claim based upon counsel's failure to renew her motion to dismiss where petitioner failed to demonstrate that the outcome would have been different had the renewed motion been made, particular in light of other evidence including petitioner's own statements).

### E.    Whether Excessive Sentencing Claim Should be Dismissed

Following the guilty verdict, Petitioner was sentenced to a determinate term of twelve years imprisonment and five years of post-release supervision. (Dkt. No. 15-7 at 24-25.) Because Petitioner had a prior felony conviction, the governing statute provided for a mandatory determinate sentence between five and fifteen years imprisonment and five years of post-release supervision. *See* N.Y. Penal Law §§ 70.06(b); 70.45(2). Therefore, the applicable sentence is within the range set by state law.

"No federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); *Grimes v. Lempke*, No. 9:10-CV-0068 (GLS/RFT), 2014 WL 1028863, at *3 (N.D.N.Y. Mar. 14, 2014) ("It is well settled that the issue of whether a sentence was overly harsh or excessive is not a proper issue for review in the habeas context unless the sentence was outside of the permissible range provided for by state law.") (citing *White*, 969 F.2d at 1383).

To the extent that Petitioner's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, dismissal would still be appropriate. The length of Petitioner's sentence is not so constitutionally disproportionate as to raise Eighth Amendment concerns. *See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (finding that sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft under three strikes law did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence for repeat non-violent felony offender did not constitute cruel and unusual punishment); *Watson v. Shanley*, No. 9:19-CV-00275-JKS, 2021 WL 1294107, at

*5 (N.D.N.Y. April 7, 2021) (eighteen year sentence for felony drug conviction "does not remotely approach the realm of grossly disproportionate punishments."). Accordingly, the sentence imposed on Petitioner does not create grounds for habeas relief, and this court recommends dismissal of this claim.

## V.    CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[8] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is meritorious. Accordingly, I recommend against the issuance of a COA.

---

[8]    A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

**ACCORDINGLY**, it is

**RECOMMENDED** that the Petition be **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: August 8, 2023
      Binghamton, New York

Hon. Miroslav Lovric
U.S. Magistrate Judge

---

[9]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).